UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

**MICHAEL ROMANO**,

      Plaintiff,

  v.

**WARDEN**,

      Defendant.

No. 23-02919

**OPINION**

---

**APPEARANCES:**

**Alison Brill**
Federal Public Defender–DNJ
800 Cooper Street, Suite 350
Camden, NJ 08102

   *On behalf of Plaintiff.*

**John Francis Basiak**
**John Andrew Ruymann**
U.S. Attorney's Office
402 East State Street, Room 430
Trenton, NJ 08608

**Samantha R. D'Aversa**
DOJ–USAO
Mitchell H. Cohen Building & U.S. Courthouse
401 Market Street
P.O. Box 2098
Camden, NJ 08101

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on Petitioner Michael Romano's ("Petitioner" or "Mr. Romano") Motion for Bail, (ECF No. 42), and Motion for Summary Judgment, (ECF No. 55), and Respondent FCI Fairton Warden's ("Respondent" or "Government") Motion to Dismiss for Lack of Jurisdiction or, in the alternative, Cross-Motion for Summary Judgment. (ECF No. 54). The Court did not hear oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Respondent's Motion to Dismiss is **GRANTED**. (ECF No. 54). Having determined that it lacks jurisdiction, Petitioner's Motions for Bail and Summary Judgment, (ECF Nos. 42, 55), and Respondent's Cross-Motion for Summary Judgment, (ECF No. 54), are **DENIED AS MOOT.**

I.  **BACKGROUND**

Petitioner Michael Romano is currently serving a 240-month federal sentence imposed by the United States District Court for the Eastern District of New York following his 2011 conviction for conspiracy to commit mail fraud, wire fraud, and money laundering. (Pet'r's SOMF, ECF No. 55-2 at ¶¶ 1–2). The charges stemmed from a coin fraud scheme operated between 1990 and 2008, in which Mr. Romano and his co-conspirators misrepresented the value of collectible coins, causing customer losses and over $33 million in deposits into companies affiliated with Mr. Romano. (Resp't's SOMF, ECF No. 54-2 at ¶¶ 1–2).

In June 2022, after serving more than a decade of that sentence, Mr. Romano was selected for release to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security

Act ("CARES Act"),[1] under a Bureau of Prisons ("BOP") policy meant to protect vulnerable inmates from the heightened risks of COVID-19. (Pet'r's SOMF, ECF No. 55-2 at ¶¶ 25–26, 43). The BOP's decision followed a fact-specific review of Mr. Romano's eligibility and compliance history—including his clean disciplinary record in custody[2] and longstanding family support in New Jersey—and was made with full awareness of the concerns raised by the prosecuting U.S. Attorney's Office and victims, who were notified in advance. (*Id.* at ¶¶ 5–6, 18, 33, 36). Accordingly, Mr. Romano was released to live with his sister, and during his brief time at home, he reconnected with family, pursued employment, and resumed some of the ordinary rhythms of civilian life after more than ten years in prison. (*Id.* at ¶ 43–53). He did all of this while complying fully with the terms of his home confinement, which included wearing an ankle monitor, checking in at the halfway house once a week, and obtaining permission for any absences. (Pet'r's SOMF, ECF No. 55-2 at ¶ 54; Pet'r's Mot. for Summ. J., ECF No. 55-1 at 19).

However, Mr. Romano's return home lasted less than a month before BOP suddenly reversed course. On July 18, 2022—27 days after his release—Mr. Romano was directed to report to a halfway house. (Pet'r's SOMF, ECF No. 55-2 at ¶ 60). The next day, he was returned to prison

---

[1] Home confinement is a form of custodial placement in which an inmate serves part of a sentence at a private residence under strict monitoring, rather than in a secure correctional facility. *See* 18 U.S.C. §§ 3563(b)(19), 3624(c). Inmates remain in BOP custody while on home confinement and are subject to conditions including electronic monitoring, curfews, and restrictions on movement. *Id.* Under the CARES Act, the BOP was temporarily granted expanded authority to place eligible inmates in home confinement as a response to the COVID-19 pandemic. (Resp't's SOMF, ECF No. 54-2 at ¶ 9; *see also* CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)).

[2] Indeed, by all accounts, Mr. Romano was a model inmate: he maintained a spotless disciplinary record, received positive reviews from BOP staff, and devoted his time to helping others in custody. (Pet'r's SOMF, ECF No. 55-2 at ¶¶ 5–6).

without advance notice or an opportunity to contest the revocation of his home confinement.[3] (*Id.* at ¶ 63). At the time, prison officials told Mr. Romano that the reason for the revocation was that he had not yet served 50% of his sentence.[4] (*Id.* at ¶ 64). However, that rationale was facially incorrect: the CARES Act placed no such categorical restriction, and internal BOP guidance had already accounted for the length of time served in determining Mr. Romano's eligibility.[5] (*Id.* at ¶¶ 13–19).

The Government initially repeated the same explanation in this case. In June 2023, it submitted a sworn declaration from a BOP official affirming that Mr. Romano's home confinement was revoked because he had not served half of his sentence. (Raguckas Decl., ECF No. 7-1 at ¶ 15). The Government later abandoned that explanation and instead asserted that Mr. Romano was denied placement due to new victim concerns that were purportedly raised after his

---

[3] Following outreach from the U.S. Attorney's Office for the Eastern District of New York, Mr. Romano's case was re-reviewed by BOP's Central Office Home Confinement Committee ("HCC") in July 2022, who determined that, despite already being placed on home confinement, "Mr. Romano is not appropriate for home confinement at this time." (Pet'r's SOMF, ECF No. 55-2 at ¶¶ 55–61). Mr. Romano appears to be the only individual whose case was reconsidered by the HCC after already being placed on home confinement. (*Id.* at ¶ 59).

[4] At the time of his release, Mr. Romano had served approximately 47% of his sentence. (Pet'r's SOMF, ECF No. 55-2 at ¶ 30).

[5] In addition to being factually incorrect, this false explanation was also consequential. Because Mr. Romano believed he would be eligible once he reached the 50% threshold, he delayed pursuing administrative or judicial relief. (Pet'r's Mot. for Bail, ECF No. 42 at 11). By the time he did, BOP had implemented a new policy requiring input from the U.S. Attorney's Office for inmates with more than five years remaining and denied his renewed request on that basis. (Pet'r's SOMF, ECF No. 55-2 at ¶¶ 70–71). As a result, Mr. Romano found himself foreclosed from relief not only because the original justification had been inaccurate, but because he had relied on it in good faith, to his detriment.

release.[6] (Tr., ECF No. 9 at 11:7–12; Raguckas Decl., ECF No. 20-1 at ¶ 8; Stover Decl., ECF No. 20-2 at ¶ 3; Tr., ECF No. 31 at 29:5–21). It was only through discovery—after the Court expressed concerns about the adequacy of the record—that a different account emerged. (Tr., ECF No. 31 at 4:8–20, 36:16–37:9, 46:11–47:9). According to subsequent BOP disclosures, Mr. Romano's revocation was prompted by communications from the United States Attorney's Office in the Eastern District of New York, which expressed what one official described as "extreme concerns" about Mr. Romano's release. (Pet'r's SOMF, ECF No. 55-2 at ¶ 30; Resp't's Resp. to Pet'r's SOMF, ECF No. 65-1 at ¶ 30).

Mr. Romano, who had no infractions during his brief time on home confinement, was never given a hearing or any formal process before being returned to custody. (Pet'r's Mot. for Bail, ECF No. 42 at 2). The record contains no indication that BOP identified a violation of any condition of release, and the Government does not contend otherwise. Instead, the Government's position has shifted over the course of this litigation, from categorical ineligibility, to discretionary revocation based on purportedly new victim concerns, to reliance on prosecutorial input. The shifting nature of the Government's explanations over the past three years—some of which were initially presented to the Court in sworn declarations—has given rise to serious concerns about its candor, particularly in light of the absence of any alleged rule violation or contemporaneous justification in the record.

---

[6] Critically, the record shows that victims were notified of Mr. Romano's impending release in advance, and that the U.S. Attorney's Office for the Eastern District of New York registered both their own objections and purported victim objections prior to Mr. Romano's placement on home confinement. (Pet'r's SOMF, ECF No. 55-2 at ¶¶ 33, 36). Despite the Government's representations to the contrary, there is no indication in the record of any new victim concerns arising after his release.

Whatever the precise trigger, the outcome again had real consequences. On December 20, 2024, President Biden commuted the sentences of nearly 1,500 individuals who had remained on CARES Act home confinement through the end of the COVID-19 emergency.[7] Because Mr. Romano had been returned to BOP custody in July 2022, he was not eligible for clemency.[8] And even apart from clemency, had BOP not revoked his placement, Mr. Romano likely would have remained on home confinement through the remainder of his custodial sentence—living at home with his family rather than in prison. (Pet'r's SOMF, ECF No. 55-2 at ¶ 22, 24; *see also* 28 C.F.R. § 0.96(u)(2) ("[A]ny prisoner placed in home confinement under the CARES Act who is not yet otherwise eligible for home confinement under separate statutory authority" may "remain in home confinement under the CARES Act for the remainder of the prisoner's sentence, as the Director [of BOP] determines appropriate, provided the prisoner is compliant with all conditions of supervision.")).

This sequence of events—release, compliance, revocation without explanation, and eventual exclusion from clemency—raises serious due process and liberty concerns. At a minimum, the record reflects institutional miscommunication, inconsistent representations to the Court, and a complete lack of transparency in the process by which Mr. Romano was returned to custody. Whether the Court has jurisdiction to review this matter is a question of law the Court

---

[7] *See* Statement from President Joe Biden on Providing Clemency for Nearly 1,500 Individuals on Home Confinement and Pardons for 39 Individuals Convicted of Non-Violent Crimes (Dec. 12, 2024), available at https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2024/12/12/statement-from-president-joe-biden-on-providing-clemency-for-nearly-1500-individuals-on-home-confinement-and-pardons-for-39-individuals-convicted-of-non-violent-crimes/ ("Biden Clemency Statement").

[8] Indeed, President Biden granted clemency to every individual who was still serving their sentence on CARES Act home confinement as of December 2024, without exception. *See* Biden Clemency Statement. Given the uniformity of the commutations, it appears highly likely that Mr. Romano would have received clemency had he remained on home confinement.

6

addresses below. But the handling of Mr. Romano's revocation calls into question the fairness and transparency of the entirety of the underlying process.

## II. PROCEDURAL HISTORY

On May 26, 2023, Petitioner filed this habeas action *pro se*, under 28 U.S.C. § 2241, challenging BOP's revocation of home confinement without notice, a hearing, or a stated reason, and sought reinstatement of his home confinement placement. (ECF No. 1). Following the appointment of a federal public defender, Petitioner filed an amended habeas petition, along with motions for bail and discovery, on October 20, 2023. (ECF Nos. 2–4, 14–16).

The Court held oral argument on these motions on April 23, 2024, and granted Petitioner's motion for limited discovery, finding good cause based on the unusual factual posture,[9] lack of any record, and the apparent lack of contemporaneous documentation supporting the revocation. (ECF Nos. 26, 31). The Court denied Petitioner's motion for bail without prejudice in light of its decision to permit targeted discovery, explaining that the record was not yet sufficiently developed to justify release and that the appropriate course was to allow factual development before considering whether any remedy might be available. (*Id.*).

A status conference was held on August 27, 2024. (ECF No. 41). During the conference, Petitioner indicated an intent to reopen his prior motion for bail, and the Court advised that he could do so by formal motion. (Tr., ECF No. 41 at 23:15–25:16). Petitioner subsequently filed the instant Motion for Bail on September 27, 2024, citing the prolonged pendency of the case, the

---

[9] Specifically, the Court pointed to Petitioner's undisputed compliance with the terms of his home confinement, the abrupt and unexplained revocation of that status, and the lack of contemporaneous procedural safeguards. These circumstances, the Court noted, presented a distinct factual posture from a standard denial of home confinement, and raised complex questions regarding the availability of judicial review and remedies following the expiration of the CARES Act. (Tr., ECF No. 31 at 3:7–10:4).

strength of his claims, and changed personal circumstances. (ECF No. 42). The Government filed its opposition on October 21, 2024, (ECF No. 47), and Petitioner submitted a reply on October 28, 2024. (ECF No. 48).

The Government then filed the instant Motion to Dismiss for Lack of Jurisdiction or, in the alternative, Motion for Summary Judgment on December 13, 2024, (ECF No. 54), and Petitioner filed his Cross-Motion for Summary Judgment the same day.[10] (ECF No. 55). The Parties filed their Oppositions and Reply Briefs on January 21 and February 3, 2025, respectively. (ECF Nos. 65–68).

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) must be granted if the Court lacks subject matter jurisdiction. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). A plaintiff bears the burden of proving that the Court has subject matter jurisdiction. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (citation omitted).

Under Federal Rule of Civil Procedure 12(b)(1), an attack on subject matter jurisdiction may be either a facial or a factual attack. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (internal quotation marks, alterations, and citation omitted).

In a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*,

---

[10] The American Civil Liberties Union ("ACLU") also submitted an *amicus curiae* brief in support of Petitioner on December 30, 2024. (ECF No. 63).

473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). In a factual attack, "it is permissible for a court to review evidence outside the pleadings." *Id*. (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)).

Here, Respondent presents a facial challenge to jurisdiction because Respondent does not hinge its jurisdictional argument on an assertion that the factual allegations in the Petition are untrue. Rather, Respondent contends that the allegations of the Petition, even if true, do not set forth a claim that is within this Court's jurisdiction. Such a challenge is a facial challenge. *See, e.g., Jamal v. Kane*, 96 F. Supp. 3d 447, 452 (M.D. Pa. 2015) (citations omitted) (explaining difference between facial and factual challenges).

## IV.  DISCUSSION

Petitioner asks this Court to vacate the BOP's revocation of his CARES Act home confinement, contending that it violated his constitutional right to due process, and return him to home confinement. There can be no doubt that the Petition raises serious concerns about the fairness and integrity of the Government's conduct. But as a threshold matter, the Court must consider its own authority to act. Regrettably, binding precedent compels the conclusion that this Court lacks jurisdiction under § 2241 to grant the relief Mr. Romano seeks. While this Court believes there should be a cognizable claim and remedy in this instance, Mr. Romano's relief must come from an appellate court, as this Court is bound to follow precedent.

### A. Legal Framework

Federal habeas jurisdiction under § 2241 applies to claims by federal prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts may exercise that jurisdiction where a petitioner challenges either the "fact or length" of his confinement or the "execution" of his sentence. *See Cardona v. Bledsoe*,

9

681 F.3d 533, 535 n.4 (3d Cir. 2012) (citing *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 241–42 (3d Cir. 2005)); *Leamer v. Fauver*, 288 F.3d 532, 542 (3d Cir. 2002).

The Third Circuit has defined "execution" as "put[ting] into effect" or "carry[ing] out" the sentence imposed by the court. *Cardona*, 681 F.3d at 536 (citing *Woodall*, 432 F.3d at 243). To fall within this category, a claim must allege that the BOP is failing to implement the sentence as it was judicially imposed. *Id.* at 536–37. A quintessential example is where the BOP fails to credit time as directed in the judgment or disregards a court's recommendation regarding facility placement. *See, e.g., Woodall*, 432 F.3d at 241–244 (finding that petitioner properly challenged the execution of his sentence under § 2241 when BOP refused to abide by sentencing court's recommendation of placement in halfway house).

Notably, the Third Circuit in *Cardona* clarified that *Woodall*'s holding depended on the fact that the BOP's placement decision directly contradicted the sentencing court's express recommendation. *Cardona*, 681 F.3d at 536–37. In such a case, the BOP's action could be understood as failing to "carry out" the sentence as imposed. But where the BOP's decision is consistent with the judgment and concerns only the conditions or location of confinement, it does not constitute a challenge to the execution of the sentence—and therefore does not fall within § 2241's scope.

This boundary drawn in *Cardona* reinforces the jurisdictional limits of federal habeas review. Courts may not entertain habeas petitions that raise claims falling outside the "core" of habeas, even if those claims allege serious constitutional violations. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("Constitutional claims that merely challenge the conditions of a prisoner's confinement . . . fall outside of [habeas] core . . .") (citation omitted); *Leamer*, 288 F.3d at 544

10

(§ 2241 does not apply "unless the claim would fall within the 'core of habeas' and require sooner release if resolved in the plaintiff's favor.").

Overall, this framework reflects the fundamental principle that the BOP—not the courts—has statutory authority and discretion to determine the place and manner in which a sentence is served. *See* 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the prisoner's imprisonment . . ."); *Tapia v. United States*, 564 U.S. 319, 331 (2011). While the Court may disagree with how that discretion is exercised, or even consider it unjust, that does not mean the Court has jurisdiction to review it under § 2241.

### B. Revocation of Home Confinement is Not Cognizable Under § 2241

Mr. Romano's petition must be dismissed for lack of jurisdiction because it does not challenge the fact or duration of his confinement, or the execution of his sentence in any way that is subject to judicial review as defined by current precedent. Rather, it challenges the BOP's discretionary decision to revoke a particular placement—that is, to require Mr. Romano to serve his custodial sentence at FCI Fairton rather than at home under the temporary authority conferred by the CARES Act. That decision, however unfair or unjust it appears to be, does not alter the amount of time Petitioner must serve, nor is it inconsistent with the sentencing court's judgment. It therefore falls outside the scope of § 2241.

As an initial matter, although Petitioner invokes the Supreme Court's decisions in *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Young v. Harper*, 520 U.S. 143 (1997) in an attempt to establish jurisdiction, the Court finds these cases distinguishable in several material respects. First, as Petitioner acknowledges, these cases were from state prisoners and did not proceed under § 2241. Second, the Court finds that the analogy to parole is inapposite. Parole represents a legal release from prison; the individual is no longer confined by the penal system,

even if still subject to conditions. *United States v. Quailes*, 126 F.4th 215, 222–23 (3d Cir. 2025) (describing parole as "an established variation on imprisonment of convicted criminals where a prisoner is released from prison, before the completion of their sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence") (cleaned up) (quoting *Morrissey*, 408 U.S. at 477).

By contrast, a release to home confinement is merely a "change in the location where the inmate serves his sentence." *United States v. Gerner*, No. 19-470, 2023 WL 1971357, at *1 (E.D. Pa. Jan. 18, 2023) (citation omitted), *R&R adopted sub nom. Gerner v. Caravajal*, No. 22-1953, 2023 WL 1971252 (E.D. Pa. Feb. 10, 2023). Thus, an inmate placed on home confinement remains in custody within the meaning of § 3621, and the home placement is simply a less restrictive site of confinement. *Compare Jackson v. Fed. Bureau of Prisons*, No. 05-2339, 2005 WL 1705775, at *6 (D.N.J. July 20, 2005) (describing home confinement under § 3624(c) as "prerelease custody") *with Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995), *aff'd sub nom., Young*, 520 U.S. 143 ("[T]he dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of *release* from incarceration.") (emphasis added). While to a layperson it may represent a substantial difference, transferring a prisoner from a secure facility to home confinement is no different, in jurisdictional terms, from transferring the inmate from one

prison to another.[11] The BOP's decision to revoke that placement and return the inmate to a secure facility—without changing the underlying sentence—does not terminate custody, and does not invoke the same procedural protections applicable to parole revocation.

It is this distinction that has led the majority of courts in this Circuit, including this one, to conclude that challenges to BOP decisions regarding CARES Act home confinement do not lie in habeas. These courts reason that such decisions concern only the conditions or location of confinement, and do not affect either the sentence's length or the court's intent. *See, e.g., Tetterton v. Warden, FCI Fort Dix*, No. 23-1394, 2023 WL 4045086, at *3–4 (D.N.J. June 16, 2023) (revocation of CARES Act home confinement is "not reviewable by any court" under § 2241 because it affects only "where and under what circumstances [p]etitioner will serve his sentence") (citation omitted); *Davey v. N'Diaye*, No. 22-2254, 2023 WL 2570221, at *7 (D.N.J. Mar. 20, 2023) (home confinement under CARES Act is a designation of a place of imprisonment and not reviewable by any court under § 2241); *Perri v. Warden of FCI Fort Dix*, No. 20-13711, 2023 WL

---

[11] The Court is not unsympathetic to Petitioner's view that, as a practical and human matter, the experience of serving a sentence at home differs dramatically from incarceration in a prison. Several district courts within the Second Circuit have credited that distinction in recognizing a liberty interest in remaining on home confinement and have permitted habeas review under § 2241. *See, e.g., Freeman v. Pullen*, 658 F. Supp. 3d 53 (D. Conn. 2023); *Tompkins v. Pullen*, No. 22-00339, 2022 WL 3212368 (D. Conn. Aug. 09, 2022). This Court respectfully finds those decisions more attuned to the reality of modern custody. But under controlling Third Circuit precedent, the distinction is not legally cognizable for the purposes of habeas jurisdiction. *See Cardona*, 681 F.3d at 536–37. While the question of whether home confinement gives rise to a protected liberty interest is an open question in this district, *see Romano v. Warden, FCI Fairton*, No. 23-1052, 2023 WL 3303450, at *9 (D.N.J. May 8, 2023) ("*Romano I*"), there does not appear to be any remedy for due process violations under these circumstances, given that the Supreme Court has narrowly confined the types of claims covered under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See Ziglar v. Abbasi*, 582 U.S. 120 (2017). Accordingly, if § 2241 does not provide jurisdiction over placement decisions under Third Circuit law, a petitioner in Mr. Romano's position is left without any forum to vindicate a serious constitutional wrong. In that respect, the Second Circuit's approach, which allows for habeas relief in such circumstances, appears more faithful to the animating principles of the Suspension Clause. Perhaps the Third Circuit will reconsider or modify its approach under the facts of this case.

13

314312, at *3 (D.N.J. Jan. 19, 2023) (same); *Reynolds v. Finley*, No. 21-1251, 2022 WL 36225, at *5 (M.D. Pa. Jan. 4, 2022) (same).

Indeed, this Court reached the same conclusion in *Romano I*, holding that a habeas petition challenging Mr. Romano's denial of release to CARES Act home confinement was not cognizable under § 2241. 2023 WL 3303450, at *4. Nothing in the current Petition alters that analysis. While Petitioner now frames his claim as a challenge to the "revocation" rather than the "denial" of home confinement, the distinction is immaterial. In either case, the BOP made a placement determination within its statutory discretion. And whether the inmate seeks to compel release, or to be restored to a placement already conferred, the same jurisdictional bar applies.

Nor is this case meaningfully distinguishable from *Cardona*. There, the inmate was referred to a Special Management Unit ("SMU")—a highly restrictive form of confinement—based, he alleged, on retaliatory motives and without the procedural protections required by BOP policy. 681 F.3d at 534. The Third Circuit nevertheless affirmed dismissal for lack of jurisdiction, explaining that Cardona's transfer to the SMU—however harsh or procedurally defective—was a placement decision that did not affect the execution of his sentence. *Id.* at 537–38. The same is true here. Placement on home confinement, like placement in an SMU, is a discretionary determination by the BOP about where and under what conditions a sentence will be served. The Petition does not allege that Mr. Romano's home confinement was required by the sentencing court's judgment, or that the BOP is refusing to implement the sentence as ordered. At most, it alleges that the BOP abused its discretion or acted unfairly in changing the location of his confinement. That is not a basis for relief under § 2241.

The Court is also unable to proceed under § 2241 under a theory that the BOP "abused its discretion" in revoking Mr. Romano's home confinement. While a handful of district court cases

14

have suggested that § 2241 permits limited review of BOP actions that are so arbitrary or capricious as to violate due process, these decisions trace their reasoning to *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1990). *See, e.g., Collins v. Bradley*, No. 20-2230, 2021 WL 4318027, at *4 (M.D. Pa. Sept. 23, 2021) ("Although the Court cannot review [petitioner's] challenge to the BOP's decision under the CARES Act, the Court may assess 'whether the BOP abused its discretion.'"), *aff'd sub nom. Collins v. Warden Canaan FPC*, No. 21-2878, 2022 WL 2752536 (3d Cir. July 14, 2022); *Holton v. Sage*, No. 22-0212, 2022 WL 3051838, at *2 (M.D. Pa. July 7, 2022).

While theoretically this Court tends to agree with these decisions, in addition to pre-dating the Third Circuit's guidance in *Cardona*, *Barden* is materially distinguishable. In *Barden*, the petitioner sought *nunc pro tunc* designation of a state prison as the place of confinement for a federal sentence, arguing that the BOP's refusal to grant it undermined the sentencing court's intent that the sentences run concurrently. 921 F.2d at 477. Because the BOP's refusal would extend the petitioner's federal custody beyond what the sentencing court intended, it directly affected the duration of confinement.

The present case bears no resemblance to *Barden*. Petitioner does not argue that the BOP contradicted the sentencing court's judgment. Indeed, the sentencing court said nothing about home confinement and could not have done so—the CARES Act had not yet been enacted. Nor does Mr. Romano claim that the revocation of home confinement has increased his sentence or denied him credit to which he was entitled. His claim is not that the BOP failed to implement the sentence, but that it acted unfairly in managing its own internal placement authority.

Moreover, even *Collins* stops well short of finding that § 2241 permits plenary review of BOP placement decisions. There, the district court permitted the habeas petition to proceed solely to assess whether the BOP had "abused its discretion." *Collins*, 2021 WL 4318027, at *4. But the

15

Third Circuit affirmed the dismissal of the petition in an unpublished opinion without adopting or endorsing the abuse-of-discretion standard. *Collins*, 2022 WL 2752536, at *1–2. In fact, other courts in this District have expressly rejected the reasoning of *Collins*. *See Tetterton*, 2023 WL 4045086, at *4 ("This Court disagrees [with the *Collins* line of cases]."). And *Cardona*—which is precedential and controlling—forecloses the possibility that a § 2241 petition can be used to challenge a BOP placement decision that neither contradicts the sentencing judgment nor affects the length of custody.

      To be sure, Mr. Romano's revocation appears to have been unfair, unjust, and done without any process. As such, there can be no doubt that it raises legitimate concerns. The record suggests that his home confinement was revoked not due to any misconduct or change in eligibility, but rather because of pressure from prosecutors after the fact. The Government has offered multiple, inconsistent explanations for its decision, and admits that it afforded Mr. Romano no process whatsoever. But troubling facts do not create jurisdiction where none exists. Federal courts are courts of limited jurisdiction. Where, as here, Congress has committed a decision to the unreviewable discretion of the BOP—*see* 18 U.S.C. § 3621(b)(5) ("[A] designation of a place of imprisonment under this subsection is not reviewable by any court.")—§ 2241 offers no basis for judicial intervention.

      In sum, while Mr. Romano's allegations raise serious concerns—particularly with respect to fairness and transparency—they do not implicate the kinds of claims for which § 2241 provides a remedy. The Court must therefore dismiss the petition for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss is **GRANTED**. (ECF No. 54). Petitioner's Motions for Bail and Summary Judgment, (ECF Nos. 42, 55), and Respondent's Cross-Motion for Summary Judgment, (ECF No. 54), are **DENIED AS MOOT.**

**CHRISTINE P. O'HEARN**
**United States District Judge**